**STEVENS & LEE**
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
*Counsel to John M. McDonnell, Esq.*
*Chapter 7 Trustee*
T: 973-387-7801
E: scott.rever@stevenslee.com

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>FAST TRACK TRADING LLC,<br><br>Debtor. | Case No: 25-10470<br><br>Chapter: 7<br><br>Judge: Hon. Michael B. Kaplan |
| JOHN M McDONNELL, ESQ.,<br>CHAPTER 7 TRUSTEE,<br><br>Plaintiff,<br>v.<br><br>ESHAN SAMUEL,<br><br>Defendant(s). | Adv. Pro. No: 26- |

**COMPLAINT TO AVOID AND RECOVER FRAUDULENT AND PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 544, 547, 548, AND 550 AND N.J.S.A. 25:2-25 AND 25:2-27**

Plaintiff, John M. McDonnell, Esq., Chapter 7 Trustee (the "Trustee" or "Plaintiff") for the bankruptcy estate of Fast Track Trading LLC ("FTT" or the "Debtor"), by and through his undersigned counsel, brings this adversary proceeding against Defendant to avoid and recover preferential transfers pursuant to 11 U.S.C. § 547; to avoid and recover fraudulent transfers pursuant to 11 U.S.C. §§ 544 and 548 and applicable New Jersey law, including N.J.S.A. 25:2-25 and 25:2-27; recover the value of avoided transfers pursuant to 11 U.S.C. § 550, and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F), (H) and (O).

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

4. Plaintiff, John M. McDonnell, Esq., is the duly appointed Chapter 7 Trustee of the bankruptcy estate of Fast Track Trading LLC and brings this action pursuant to his authority under the Bankruptcy Code.

5. Defendant, Eshan Samuel ("Defendant"), is an individual and/or entity residing, organized, located, or conducting business in Illinois.

6. Defendant participated in the Debtor's account program, purchased one or more simulated trading accounts from the Debtor, and received one or more transfers, payouts, withdrawals, refunds, or other payments from the Debtor before the Petition Date.

7. As more fully set forth herein, Defendant received transfers from the Debtor that are avoidable and recoverable pursuant to 11 U.S.C. §§ 544, 547, 548, and 550.

## BACKGROUND

8. Fast Track Trading LLC purported to operate as a proprietary trading firm offering customers access to simulated "funded" trading accounts through an online trading platform in exchange for account fees, reset fees and related charges.

9. FTT marketed itself as a legitimate trading enterprise through which participants could purportedly earn profits and receive payouts based upon successful trading performance and evaluation metrics achieved within the platform.

10. FTT offered account programs identified as Rally, Daytona, GT, and Le Mans, which offered participants purported account balances ranging from approximately $25,000 to $300,000 in exchange for one-time fees ranging from approximately $179 to $799. Participants were permitted to purchase up to twenty (20) accounts and were encouraged to engage in copy trading, thereby increasing the Debtor's potential payout exposure.

11. In reality, the Debtor did not operate a legitimate proprietary trading business. Rather than generating revenue through actual trading activity, the Debtor depended upon continuous inflows of participant funds to satisfy withdrawal requests, purported profit distributions, refunds, affiliate commissions, and other obligations, while creating the false appearance of a profitable trading enterprise.

12. The Trustee retained EisnerAmper LLP ("Eisner") to analyze the Debtor's financial operations, cash flows, payout practices, solvency, and business model. Eisner's analysis included review of the Debtor's bank records, cryptocurrency wallet records, accounting records, payment processor records, internal communications, employee interviews, and other materials.

13. Based upon that investigation and analysis, the Trustee determined that FTT lacked a legitimate independent source of revenue and relied upon participant fees to fund its operations, payouts, refunds, affiliate commissions, and other distributions. During approximately six months of operations, from May 2024 through November 2024, FTT received approximately $30.7 million from account purchase fees, reset fees, and related participant payments despite engaging in no actual trading activity capable of generating operating income or trading profits.

14. Customer payouts, refunds, affiliate commissions, and other distributions were funded directly or indirectly from commingled participant contributions rather than legitimate business earnings, investment returns, or profits generated through actual trading activity. As a

result, funds received from later participants were used to satisfy payout obligations and purported profits owed to earlier participants.

15. The Debtor operated with unreasonably small capital and lacked sufficient liquidity and reserves to satisfy its reasonably foreseeable payout obligations. The Trustee's investigation determined that the Debtor was insolvent throughout the relevant period, including during the ninety (90) days preceding the Petition Date. By October 2024, the Debtor's personnel had identified payout obligations exceeding available liquid assets by millions of dollars, and by November 2024, the Debtor was aware that outstanding payout requests exceeded its ability to pay.

16. Notwithstanding its deteriorating financial condition, FTT continued to present itself as a legitimate and profitable proprietary trading enterprise and continued to accept participant funds while relying upon continuing participant inflows to satisfy existing payout obligations.

17. The Debtor's financial structure and operations exhibited characteristics commonly associated with Ponzi or Ponzi-like enterprises. Among other things, FTT lacked a legitimate independent revenue source, lacked meaningful capital reserves, commingled participant funds, depended upon continuing participant inflows to satisfy existing payout obligations, and paid purported profits and participant withdrawals from funds contributed by other participants rather than from legitimate business earnings or trading activity.

18. Customer funds were also commingled with accounts and cryptocurrency wallets controlled by insiders and were diverted to fund personal expenses, insider transfers, luxury purchases, unrelated ventures, and other non-business expenditures.

19. Among other things, the Debtor's principal transferred substantial amounts of cryptocurrency to personal wallets and used company funds to satisfy personal obligations and expenses. Significant additional funds were directed toward a purported luxury automobile rental venture involving high-end vehicles and related leasing, storage, and property expenses, and approximately $200,000 was expended on private security services for the benefit of the Debtor's principal and his spouse.

20. FTT also exercised substantial control over participant withdrawals. As participant inflows slowed and payout obligations increased, the Debtor imposed additional payout restrictions, asserted purported rule violations, modified payout conditions, and maintained an internal "no pay" list identifying participants whose payout requests could be delayed, restricted, or denied.

21. Upon information and belief, FTT also conditioned certain payouts upon participants posting, maintaining, or removing public reviews or commentary concerning the Debtor and its operations, thereby discouraging negative publicity while the Debtor continued to solicit and receive participant funds.

22. Amounts paid to participants in excess of the amounts they contributed to the Debtor were not derived from legitimate trading profits, investment returns, or other independent economic activity. Rather, such amounts were funded from the commingled pool of participant funds. Accordingly, participants who received payments exceeding their contributions provided no reasonably equivalent value to the Debtor for such excess payments.

23. The Trustee's investigation determined that FTT's operations depended upon continuing participant inflows to fund existing payout obligations and could not generate sufficient independent revenue to satisfy those obligations. When participant inflows slowed and withdrawal

demands increased, the Debtor lacked sufficient liquidity to satisfy its obligations and ultimately collapsed.

***The Bankruptcy Filings***

24. On December 23, 2024, petitioning creditors commenced an involuntary case against the Debtor under Chapter 7 of the Bankruptcy Code (the "Involuntary Case").

25. On January 16, 2025, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Voluntary Case").

26. By Order entered on March 12, 2025, the Court consolidated the Involuntary Case and the Voluntary Case. Unless otherwise stated herein, references to the "Petition Date" refer to December 23, 2024.

27. In the course of his investigation, the Trustee identified numerous prepetition transfers potentially subject to avoidance and recovery pursuant to 11 U.S.C. §§ 544, 547, 548, and 550 and applicable state law.

28. The Trustee's investigation further determined that, before the collapse of the Debtor's operations, certain participants received substantial payouts while numerous other participants and customers remained unpaid. As alleged above, because the Debtor generated little or no legitimate trading revenue, participant payouts were funded, directly or indirectly, from the commingled pool of deposits and fees received from other participants.

29. Accordingly, certain participants received withdrawals and payouts exceeding the amounts they paid to the Debtor, while numerous other customers and creditors remained unpaid when the Debtor ceased operations.

30. The Trustee commenced this action in furtherance of his statutory duties to investigate and pursue causes of action belonging to the bankruptcy estate and to recover avoidable transfers for the benefit of the estate and its creditors.

***The Transfers to Defendant***

31. During the period preceding the Petition Date, Defendant paid the Debtor fees totaling approximately **$53,736.36** in connection with Defendant's participation in the Debtor's programs (the "Customer Payments"). A summary of the Customer Payments is attached hereto as **Exhibit A**.

32. During the same period, the Debtor transferred approximately **$58,700.00** to or for the benefit of Defendant (collectively the "Transfers"). *See* **Exhibit A**.

33. The Transfers exceeded the Customer Payments by approximately **$4,963.61** (the "Net Winnings"). *Id.*

34. The Trustee seeks to avoid the Net Winnings pursuant to 11 U.S.C. § 548(a)(1)(A).

35. Separately, because the Net Winnings represent Transfers received by Defendant in excess of the Customer Payments, the Trustee seeks to avoid the Net Winnings as constructively fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B) and pursuant to 11 U.S.C. § 544(b) and applicable New Jersey law. The Trustee reserves the right to amend the amount of the Net Winnings based upon information obtained through discovery or further analysis of the Debtor's books and records.

36. In addition, as set forth on **Exhibit B**, during the ninety (90) days preceding the Petition Date, the Debtor made certain Transfers to or for the benefit of Defendant totaling approximately **$40,700.00** (the "Preference Transfers"). The Trustee separately seeks to avoid the

Preference Transfers pursuant to 11 U.S.C. § 547(b) and to recover the avoided Preference Transfers, or the value thereof, pursuant to 11 U.S.C. § 550.

37. The Transfers, Net Winnings, and Preference Transfers may overlap. The Trustee seeks avoidance and recovery under the alternative theories alleged herein, subject to the limitation against duplicative recovery set forth in 11 U.S.C. § 550(d).

**COUNT ONE**
**Avoidance of Actual Fraudulent Transfers**
(11 U.S.C. § 548(a)(1)(A))

38. Plaintiff repeats and realleges all preceding paragraphs as though fully set forth herein.

39. As set forth on **Exhibit A**, the Debtor made the Transfers to or for the benefit of Defendant within two (2) years before the Petition Date.

40. As more fully alleged above, the Debtor operated without a legitimate independent source of revenue, commingled participant funds, relied upon funds received from later participants to satisfy payout obligations to earlier participants, and lacked sufficient liquidity and reserves to satisfy its outstanding obligations.

41. The Debtor made the Transfers with actual intent to hinder, delay, or defraud its creditors. Among other things, the Debtor used commingled participant funds to make payouts and purported profit distributions while concealing its deteriorating financial condition, lack of legitimate trading revenue, and inability to satisfy its outstanding payout obligations without continuing participant inflows.

42. The Transfers were made as part of and in furtherance of the Debtor's fraudulent operation by using funds received from participants to satisfy payout obligations and purported

profits owed to other participants, thereby perpetuating the appearance that the Debtor operated a legitimate and profitable proprietary trading enterprise.

43. In addition, the Debtor's use of funds received from later participants to fund withdrawals, payouts, and purported profits paid to earlier participants exhibited characteristics of a Ponzi or Ponzi-like enterprise. The circumstances surrounding the Debtor's operations and the Transfers further evidence the Debtor's actual intent to hinder, delay, or defraud creditors.

44. Accordingly, the Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(A).

## COUNT TWO
**Avoidance of Constructively Fraudulent Transfers**
(11 U.S.C. § 548(a)(1)(B))

45. Plaintiff repeats and realleges the foregoing allegations as though fully set forth herein.

46. As set forth in **Exhibit A**, the Net Winnings were transferred to Defendant within two (2) years before the Petition Date.

47. The Debtor received less than reasonably equivalent value in exchange for the Net Winnings.

48. At the time the Net Winnings were transferred to Defendant, the Debtor was insolvent or became insolvent as a result of such transfers.

49. Alternatively, at the time the Net Winnings were transferred to Defendant, the Debtor was engaged, or was about to engage, in a business or transaction for which the property remaining with the Debtor constituted unreasonably small capital.

50. Alternatively, at the time the Net Winnings were transferred to Defendant, the Debtor intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

51. Accordingly, the Net Winnings are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## COUNT THREE
**Avoidance of Fraudulent Transfers Under State Law**
(11 U.S.C. § 544(b); N.J.S.A. 25:2-25 and 25:2-27)

52. Plaintiff repeats and realleges the foregoing allegations as though fully set forth herein.

53. Pursuant to 11 U.S.C. § 544(b), the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable state law by an actual unsecured creditor holding an allowable claim against the Debtor.

54. At the time of the Transfers and as of the Petition Date, one or more actual unsecured creditors existed that held allowable unsecured claims against the Debtor and could have avoided the applicable Transfers under the New Jersey Uniform Voidable Transactions Act.

55. The Debtor made the Transfers with actual intent to hinder, delay, or defraud creditors. Among other things, the Debtor lacked a legitimate independent source of revenue, commingled participant funds, used funds received from later participants to satisfy payout obligations to earlier participants, concealed its deteriorating financial condition and inability to satisfy outstanding payout obligations, and made the Transfers as part of and in furtherance of its fraudulent operation.

56. The circumstances surrounding the Transfers further evidence the Debtor’s actual fraudulent intent, including the Debtor’s insolvency and inadequate capitalization, commingling of participant funds, dependence upon continuing participant inflows to satisfy existing obligations, concealment of its true financial condition, and payment of purported profits from funds contributed by other participants.

57. Accordingly, the Transfers are avoidable pursuant to 11 U.S.C. § 544(b) and N.J.S.A. 25:2-25(a).

58. Alternatively, the Debtor received less than reasonably equivalent value in exchange for the Net Winnings because the Net Winnings constituted payments in excess of the Customer Payments and were funded from commingled participant funds rather than legitimate business earnings, investment returns, or profits generated through actual trading activity.

59. At the time the Net Winnings were transferred, the Debtor was engaged, or was about to engage, in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction, and/or intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

60. Accordingly, the Net Winnings are avoidable pursuant to 11 U.S.C. § 544(b) and N.J.S.A. 25:2-25(b).

61. Alternatively, the Debtor made the transfers comprising the Net Winnings without receiving reasonably equivalent value in exchange for such transfers and was insolvent at the time of such transfers or became insolvent as a result thereof.

62. At the time of the transfers comprising the Net Winnings, one or more creditors held claims against the Debtor that arose before such transfers were made.

63. Accordingly, the Net Winnings are avoidable pursuant to 11 U.S.C. § 544(b) and N.J.S.A. 25:2-27(a).

## COUNT FOUR
**Avoidance of Preferential Transfers**
(11 U.S.C. § 547(b))

64. Plaintiff repeats and realleges all preceding paragraphs as though fully set forth herein

65. As set forth on **Exhibit B**, the Preference Transfers were made to or for the benefit of Defendant during the ninety (90) days preceding the Petition Date.

66. The Preference Transfers were made after Defendant had satisfied the applicable requirements for the respective payout, withdrawal, refund, or other payment and after the Debtor became obligated to make such payment to Defendant. Accordingly, each Preference Transfer was made for or on account of an antecedent debt owed by the Debtor before such transfer was made.

67. At the time of the Preference Transfers, Defendant was a creditor of the Debtor within the meaning of the Bankruptcy Code because Defendant held a right to payment arising from Defendant's participation in the Debtor's programs.

68. The Preference Transfers were made while the Debtor was insolvent. Pursuant to 11 U.S.C. § 547(f), the Debtor is presumed to have been insolvent during the ninety (90) days preceding the Petition Date.

69. The Preference Transfers enabled Defendant to receive more than Defendant would have received if:

(a) the case were a case under Chapter 7 of the Bankruptcy Code;

(b) the Preference Transfers had not been made; and

(c) Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

70. Prior to commencing this action, the Trustee conducted reasonable due diligence under the circumstances of this case and took into account Defendant's known or reasonably knowable affirmative defenses, including through review of the Debtor's books and records, Defendant's account and transaction history, and other information reasonably available to the Trustee.

71. Accordingly, the Preference Transfers are avoidable pursuant to 11 U.S.C. § 547(b).

**COUNT FIVE**
**Recovery of Avoided Transfers**
(11 U.S.C. § 550)

72. Plaintiff repeats and realleges the foregoing allegations as though fully set forth herein.

73. To the extent any Transfer, Net Winnings, or Preference Transfer is avoided pursuant to 11 U.S.C. §§ 544, 547, or 548, the Trustee is entitled pursuant to 11 U.S.C. § 550(a) to recover from Defendant the property transferred or, if the Court so orders, the value of such property.

74. Defendant was the initial transferee of the Transfers, including the Net Winnings and Preference Transfers, within the meaning of 11 U.S.C. § 550(a)(1).

75. The Trustee is entitled to recover the property transferred pursuant to each transfer avoided under 11 U.S.C. §§ 544, 547, or 548, or, if the Court so orders, the value of such property, subject to the limitation against duplicative recovery set forth in 11 U.S.C. § 550(d).

76. The Trustee further seeks prejudgment interest from the date of demand or such other date as the Court deems appropriate, post-judgment interest as provided by law, costs, and such other and further relief as the Court deems just and proper.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant as follows:

(i) avoiding the Transfers set forth on **Exhibit A**, or such portions thereof as are determined to have been made with actual intent to hinder, delay, or defraud creditors, pursuant to 11 U.S.C. §§ 544 and 548(a)(1)(A) and applicable New Jersey law;

(ii) avoiding the Net Winnings set forth on **Exhibit A**, or such other amount as may be established through discovery or at trial, to the extent avoidable pursuant to 11 U.S.C. §§ 544 and 548(a)(1)(B) and applicable New Jersey law;

(iii) avoiding the Preference Transfers set forth on **Exhibit B**, pursuant to 11 U.S.C. § 547(b);

(iv) recovering from Defendant pursuant to 11 U.S.C. § 550(a) the property transferred pursuant to each transfer avoided under 11 U.S.C. §§ 544, 547, or 548, or, if the Court so orders, the value thereof, without duplicative recovery;;

(v) awarding prejudgment interest and post-judgment interest as permitted by law;

(vi) awarding costs, expenses, and such attorneys' fees to the extent permitted by applicable law;

(vii) granting such other and further relief as the Court deems just and proper.

Dated: October 15, 2026

*<u>/s/ SCOTT S. REVER, ESQ.</u>*
SCOTT S. REVER, ESQ.
**STEVENS & LEE**
*Special Counsel to John M. McDonnell, Esq., Chapter 7 Trustee*